## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NAN LIU, HAO LIU, AND GUANGXIANG XU DIRECTLY AND DERIVATIVELY ON BEHALF OF EB-5 SF INVESTMENT LIMITED PARTNERSHIP DIRECTLY AND DERIVATIVELY ON BEHALF OF SF HOTEL INVESTORS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EB5 GLOBAL SF, LLC, SF HOTEL INVESTORS, LLC, MIMA REAL ESTATE PARTNERS I, LLC, RENOIR HM, LLC, PROPER HOSPITALITY LLC, KOR REALTY GROUP L.L.C., BRAD KORZEN, KELLY WEARSTLER, ALEX SAMEK, BRIAN DELOWE, AND DOES 1-500, <br><br> Defendants. | Civil Action No. _____ <br><br> **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT AND
## CLASS ACTION COMPLAINT FOR DAMAGES

Now come the Plaintiffs and allege and aver as follows:

1.    Some or all of the following paragraphs are alleged on information and belief:

### PARTIES

2.    Plaintiff Nan Liu is an individual and resident of China.

3.    Plaintiff Hao Liu is an individual and resident of China.

4.      Plaintiff Guangxiang Xu is an individual and resident of China.

5.      Derivative Plaintiff EB-5 SF Investment Limited Partnership is a Delaware limited partnership.

6.      Derivative Plaintiff SF Hotel Investors LLC is a Delaware limited liability company.

7.      Defendant EB5 Global SF, LLC is an Oregon limited liability company.

8.      Defendant MiMA Real Estate Partners I, LLC is a Delaware limited liability Company.

9.      Defendant Renoir HM, LLC is a Delaware limited liability company.

10.      Defendant Proper Hospitality LLC is a Delaware limited liability company.

11.      Defendant Kor Realty Group LLC is a California limited liability company.

12.       Defendant Brad Korzen is an individual resident of the State of California and principal of Kor Realty Group LLC.

13.      Defendant Kelly Wearstler is an individual resident of the State of California and the wife of Brad Korzen.

14.      Defendant Alex Samek is an individual resident of the State of California and principal of Kor Realty Group LLC.

15.    Defendant Brian DeLowe is an individual resident of the State of California and principal of Kor Realty Group LLC.

16.    The precise names and roles of DOE defendants 1-500 are presently unknown to the Plaintiffs, however Plaintiffs are informed and believe and thereon allege that they are responsible in some manner for the wrongs alleged in this Complaint and will amend same when their true identities and capacities are known.

17.    All of the Defendants, and each of them, have been each other's alter egos, co-conspirators and agents and at all times relevant to this action have been working together toward a common goal.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA) because the matter in controversy exceeds the sum or value of Five Million ($5,000,000.00) Dollars as to all putative Class members, exclusive of attorneys' fees and costs. 28 U.S.C. Sections 1332(d), 1453, and 1711-1715.

19.    The Court has jurisdiction of this matter pursuant to Section 27 of the Exchange Act, which confers exclusive subject matter jurisdiction to the federal district courts "of violations of [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder." 15 U.S.C. § 78aa(a).

20.     This Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the Plaintiffs are citizens of China, while the Defendants limited partnership or limited liability companies organized or incorporated under the laws of the State of Delaware or the State of New York, and have operating their business in this district.

21.     Venue is proper in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1391 for the following reasons:

   a. Defendants are incorporated or registered to do business within this judicial district.

   b. The Confidential Private Offering Memorandum (the "CPOM") specifies that Delaware courts shall have exclusive jurisdiction for all disputes involving the private offering. The parties to the CPOM are the Plaintiffs on the one hand, and the Project Company on the other hand. The Project Company's managing members are MiMa Real Estate Partners I, LLC, a California limited liability company ("MIMA"), and EB5G SF. MiMA is an affiliate of Kor Realty Group LLC ("Kor") and Kor is an affiliate of the Project Company. The Project Company, all of its affiliates, and the principals of all of the affiliates are bound by the venue provisions of the CPOM and thus venue in Delaware is proper for all of these parties.

c. Many of the acts and transactions giving rise to this action occurred in this district because Defendants:

   i. are authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

   ii. did or does substantial business within the district;

   iii. are subject to personal jurisdiction in this district because it has availed itself of the laws and markets within this district; and/or,

   iv. the harm to Plaintiffs occurred within this district.

### COMMON ALLEGATIONS

22. This is an action wherein:

   a. the above listed individual Plaintiffs, directly, as well as derivatively, and as part of a putative class totaling approximately 90 individuals, each invested Five Hundred Thousand ($500,000.00) Dollars, cumulatively no less than Forty-Two Million ($42,000,000.00) Dollars (the "EB-5 Proceeds"), into the EB-5 SF Investment Limited Partnership, a Delaware limited partnership (the "EB-5 Fund"). These listed Plaintiffs are suing on behalf of the EB-5 Fund against (i) its general partner, Defendant EB5 Global SF, LLC (the "General

Partner"), for the causes of actions set forth below, and (ii) against SF Hotel Investors, LLC (the "Project Company"), of which the EB-5 Fund is 99.9% equity holder and a creditor, for the causes of actions set forth below.

b. the EB-5 Fund, which in turn invested all of the EB-5 Proceeds into the Project Company, is suing directly on behalf of itself and derivatively on behalf of the Project Company, against the two co-Managers of the Project Company, to wit, Defendant General Partner and Defendant MiMa Real Estate Partners, I, LLC ("MIMA"), as well as other defendants affiliated with MIMA, for the causes of actions set forth below.

23. The EB-5 Fund was represented by Defendant General Partner to be an EB-5 qualified investment fund under the applicable immigration rules and regulations that may ultimately qualify the Plaintiffs and the putative class to receive an EB-5 immigration visa and eventually receive permanent residency in the United States.

24. The EB-5 Fund since its inception has been managed by its general partner, Defendant General Partner.

25.    Under the control and management of Defendant General Partner, the EB-5 Fund invested no less than $35,722,030 of the EB-5 Proceeds to acquire 99.5% of equity interest in the Project Company, together with a loan of the original principal amount of no less than $6,277,970 (the "EB-5 Loan") payable ultimately by the Project Company.

26.    The primary business goal of the Project Company was to acquire, renovate, own and operate what was then known as the Renoir Hotel located at Market Street in downtown San Francisco (the "Hotel").

27.    The General Partner is also one of the two co-managers of the Project Company.

28.    The other co-manager of the Project Company was MIMA (together with the General Partner, in their capacities as the co-managers of the Project Company, the "Co-Managers"), which was also the seller of the Hotel to the Project Company.

29.    From the very beginning, both the General Partner and MIMA have been laden with conflicts of interests. Both the General Partner and MIMA have been engaged systematically in related party transactions that are designed to exploit the plaintiffs, who were eager to emigrate to the United States on the EB-5 immigration investment program.

30.     For example, MIMA acquired the Hotel in 2012.  It then sold the Hotel to the Project Company. The terms and conditions of such sales, including the sale price, were not disclosed to the equity holders of the Project Company or the Plaintiffs by either Defendant General Partner or Defendant MIMA.  It was – and still is – unclear how much MIMIA paid for the Hotel.

31.     MIMA sat on both sides of the table for the negotiation of the purchase and sale of the Hotel.  It was the seller of the Hotel, and in its role as manager of the Project Company, also controlled the buyer's negotiating position making a fair, "arm's length" sale an impossibility.

32.     Under the operating agreement of the Project Company, MIMA, as the manager of the Project Company, was "*not permitted on behalf of the [Project] Company to enter into any agreement with a Member or its Affiliate, unless the terms of such agreement are no less favorable to the [Project] Company than terms that would be reached by arm's length negotiation with a qualified third party that provides first class service in the applicable location*."

33.     In the private placement memorandum of the EB-5 Fund, it was vaguely disclosed that the estimated budget for the acquisition and renovation of the Hotel would be approximately $62,971,971, of which $17,693,532 was characterized as "land, net of pre-development expenses", and $9,976,164 was characterized as "building and shell", which rendered it unclear whether it referred

to the then-expected renovation costs and expenses, or part of the purchase price paid by the Project Company to MIMA for the acquisition of the building.

34.    Curiously, the initial budget for "land, net of pre-development expenses", which may plausibly refer to the purchase price paid by the Project Company for the land where the Hotel is situated, increased to $18,112,478.

35.    Such increase was only a small portion of the alleged cost overrun, under the "first-class services" provided by MIMA, the renovation of the Hotel was delayed by approximately three years, and the opaque budget went up from $62,971,971 to $110,562,585, substantially above the cost of building a comparable hotel from the ground up.

36.    Of the $110,562,585 increased budget, $47,406,521 was categorized as being part of "building and shell" costs, once again, unclear whether it meant that the Project Company had to pay $37,430,357 more (i.e., the difference between the increased budget and the original budget of $9,976,164) to MIMA as part of the purchase price of the Hotel.

37.    These and other ambiguities in the papering of the deal was a deliberate and intentional effort on the part of MIMA and the General Partner because both MIMA and the General Partner wrote into the entire transaction between the EB-5 Fund on the one side (with the General Partner ostensibly being the fiduciary of the

Plaintiffs) and the Project Company on the other side, and both MIMA and the General Partner sought to obfuscate such perverse incentives.

38.    For example, both MIMA and the General Partner, as the managing members of the Project Company, received 10.5% of the project development costs, which includes the costs and expenses in connection with the acquisition (i.e., sales commission), design and development and construction of the Hotel, from the Project Company.   This gave both MIMA and the General Partner the perverse incentives to increase the amount spent on the acquisition and renovation of the Hotel, in breath of their respective fiduciary duties to the equity holder(s) of the Project Company and to the Plaintiffs.

39.    Further, the GP and MIMA put into place provisions that would leave them 100% owners of the Project Company and the Hotel with the EB-5 Fund retaining no interest in either.  These provisions effectively put less than a 15% cap on the fund investors maximum return on the Hotel project. Functionally speaking, MIMA sold the EB-5 investors a potentially temporary interest in the Hotel, unilaterally determined the sales for same and charged the EB-5 Investors 10.5% of commission of the sales price and 10.5% of future development costs.

40.    Both MIMA and General Partner took advantage of the Plaintiffs in a predatory manner, and the entire transaction between the Plaintiffs on the one side

and MIMA and the General Partners on the other side became a "tail I win, head you lose" game.

41.     Under the limited partnership agreement of the EB-5 Fund, the General Partner *"shall have fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership, whether or not in its immediate possession or control. The General Partner shall not employ, or permit another to employ, such funds or assets in any manner except for the exclusive benefit of the Partnership."* However, the General Partner, has effectively been bribed by MIMA with the contingent profit and equity interest in the Hotel, together with the immediate payment of a portion of the 10.5% commission for any funds spent on the Hotel, and has breached its fiduciary duties to the Plaintiffs in its reckless pursuits of its self-interests.

42.     MIMA, Renoir HM, LLC, Proper Hospitality LLC are all affiliated with Kor Realty Group, LLC (all of the foregoing four entities, collectively, the "Kor Parties"), are all the alter ego of each other, and are all under the common control of defendant Mr. Brad Korzen, the husband of defendant Ms. Kelly Weastler, who used all of the Kor Parties as instruments to commit the malfeasance against the Plaintiffs.

43.     In order to induce the Plaintiffs to each invest $500,000 into the EB-5 Fund, the General Partner, in concert with the Kor Parties, knowingly made materially false statements to the Plaintiffs, which the Plaintiffs reasonably relied upon to their detriment.

44.    One example of such false statements is that the Hotel would be managed by Mariott.  This statement was communicated to Plaintiffs both orally and in writing.

45.    In order to mislead the Plaintiffs to believe that Mariott would actually manage the Hotel, the General Partner and MIMA presented with the Plaintiff with a letter of credit from Mariott, which is apparently an arms-length third party that may actually provide first-class services to the Hotel, and therefore to the Project Company and indirectly the EB-5 Fund.

46.    However, from the beginning, neither the Kor Parties nor the General Partner truly intended to have Mariott manage the Hotel, which would deprive them of the opportunity to continue to access the cash produced by the Hotel.   Rather, the Kor Parties and the General Partner turned down the opportunity to collaborate with Mariott, For specious pretextual reasons.

47.    Ultimately, the Kor Parties and the General Partner brazenly gave themselves the opportunity to manage the Hotel, after a delay of about 3 years in completing the renovation of the Hotel and a cost overrun of over $40 million. Plaintiffs were informed by letter that Korr and not Mariott would not manage the properties long after their investments into the project were secured by Defendants.

48.    The terms and conditions upon which the Kor Parties managed the Hotel were less favorable to the Project Company than those set forth in the letter of intent with Mariott.

49.    Neither the Plaintiffs nor the EB-5 Fund were provided with the opportunity to evaluate the terms and conditions upon which the Kor Parties would operate and manage the Hotel.  It was ironic that the very same people who had engaged in such glaring improprieties with respect to the Hotel decided to rename it the "Proper" Hotel.

50.    Based upon the foregoing, Plaintiffs have reasonable grounds to believe that the General Partner, MIMA and other Kor Parties have essentially used the EB-5 Proceeds and any cash generated by the operation of the Hotel, including any proceeds from the loans secured by the equity interests of the Project Company and/or the Hotel, as an ATM machine, or play money, so as to boost the profiles of the individuals such as Ms. Wearstler and Mr. Korzen as high-end hoteliers and/or interior designers.

51.    Unfortunately, the malfeasance and incompetence of the General Partner, MIMA and the other Kor Parties had consequence.  Such consequences are more than the delay of the opening of the Hotel and the cost overrun.

52.   In order to finance the cost overrun, the Project Company had to borrow additional loans and subsequently refinance such loans.

53.   Now the loans are coming due, and the Hotel is at the risk of being foreclosed upon by its secured lender(s).

54.   If the Hotel and/or the equity interest of the Project Company is to be seized or foreclosed upon, the Plaintiffs will lose all or substantially all of their investment in the EB-5 Fund as the EB-5 Fund's equity interests in the Project Company will be of little value.

## I.   CLASS ACTION

55.   Plaintiffs bring this action on behalf of themselves and all others similarly situated ("the Class"), pursuant to Delaware Court of Chancery Rule 23(a) and (b)(3), or pursuant to Rule 23(a) and (b)(2), on their own behalf and on behalf of all others who were solicited and/or invested in the Hotel for the purpose of obtaining an EB-5 visa.

56.   Plaintiffs believe the Class to be no less than 84 individuals who should be easy to identify from the records of their investment.  All of those individuals are the limited partners of the EB-5 Fund and have identical rights and obligations under the limited partnership agreement of the EB-5 Fund.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

57.     Defendants and their respective agents or employees are excluded from the Class.

58.     There is a well-defined community of interest in the litigation, the proposed Class is easily ascertainable, and Plaintiffs are proper representatives of the Class because:

a. ***Numerosity***: The potential members of the Class as defined are numerous and diversely located nationwide and out of the country such that joinder of all members of the Class is impracticable. Joinder of all members of the Class is not practicable.

b. ***Commonality:*** There are questions of law and fact common to Plaintiffs and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

- The rights and obligations of the General Partner and all of limited partners of the EB-5 Funds;

- The breach of the General Partner of its fiduciary duties in connection with the EB-5 Fund;

- The rights and obligations of the EB-5 Fund, and the Kor Parties arising from the transactions;

- ▪ The breach of the Project Company of its obligations to the EB-5 Fund;

- ▪ The nature and extent of damages, restitution and equitable relief;

- ▪ and/or other relief to which the Defendants' conduct entitled the Class members; and

- ▪ the proper formula(s) for calculating and/or restitution owed to Class members.

c. **_Typicality:_**   Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class members were deprived of property rightly belonging to them, arising out of and caused by Defendants' breach of contract and other misfeasance, in similar ways.

d. **_Adequacy of Representation:_**   Plaintiffs are members of the Class and will fairly and adequately represent and protect the interests of class members. Plaintiffs' interest does not conflict with those of the other Class members. Counsel who represent Plaintiffs are competent, experienced and will devote sufficient time and resources to the case and otherwise adequately represent the Class.   Approximately 47 members of the class have entered into an engagement agreement with counsel for Plaintiffs.

e. ***Superiority of Class action:*** A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual joinder of all Class members would be impracticable. Even if all Class members could afford individual litigation, the court system would benefit from a class action. The prosecution of separate claims by individual members of the Class would create a risk of inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class, as well as create the potential for inconsistent or contradictory judgments. Furthermore, the prosecution of separate claims by individual members of the Class would create a risk of adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests. Individualized litigation would also magnify the delay and expense to all parties and to the court system presented by the issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive

supervision by a single court, as well as the economy of scale and expense.

59.    At all times relevant hereto, Plaintiffs and the other putative members of the Class are limited partners of the EB-5 Fund.

60.    Plaintiffs bring this action derivatively in the right and for the benefit of EB-5 Fund to redress injuries suffered, and to be suffered, by the EB-5 Fund (and its limited partners) as a direct result of, without limitation, misfeasance, mismanagement, breaches of fiduciary duty by the General Partner, the Kor Parties and their respective agents, and breach of contract, deceit, and unjust enrichment.

61.    Plaintiffs each are a contractually vested limited partners of the partnership, a vested limited partner of at the time of the wrongdoing alleged herein, and has been a vested member continuously since that time.

62.    Upon information and belief, General Partner and its agents have failed and/or refused to take timely action to protect the interest of the limited partners, despite demands therefor, and to their detriment, or such demands would be futile.

63.    Consequently, this is also a derivative action brought by the Plaintiffs as the limited partners of the EB-5 Fund for the benefit of the nominal Defendant, the EB-5 Fund.

64.    Because of its ability to control the business and general affairs of the EB-5 Fund, the General Partner owed Plaintiffs as limited partner a fiduciary obligation of good faith, loyalty and candor, and were and are required to use their utmost ability to control and manage the EB-5 Fund in a fair, just, honest and equitable manner.

65.    The General Partner was and is required to act in furtherance of the best interests of the EB-5 Fund and its limited partners so as to benefit all limited partners equally and not in furtherance of their personal interest or benefit.

66.    To discharge their duties, the General Partner was required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the partnership. By virtue of such duties, the General Partner, the officers and directors of the General Partner were required to, among other things:

   a. Exercise good faith to ensure that the affairs of the partnership were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

   b. Exercise good faith to ensure that the partnership was operated in a diligent, honest and prudent manner and complied with all applicable federal, state and foreign laws, rules, regulations and requirements, and all contractual obligations;

c. Exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the partnership;

d. Refrain from unduly benefiting themselves and other partnership insiders at the expense of the partnership; and

e. When put on notice of problems with the partnership's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

67.   Upon information and belief, the General Partner, and/or others with whom or through whom it/they acted, breached their fiduciary duty, of loyalty, care and good faith, owing to Plaintiffs and the putative Class, in particular, in its apparent failure to enforce its rights arising from its equity interests and loan in the Project Company, among other things.

68.   The conduct of the General Partner and its agents complained of herein involves a knowing and culpable violation of their obligations as general partner of the partnership, the absence of good faith on their part and a reckless disregard for their duties to the partnership and its members that the General Partner and its agents

were aware or should have been aware posed a risk of serious injury to the partnership, in particular, in its failure to enforce its rights arising from its equity interests and loan in the Project Company.

69.   Plaintiffs will adequately and fairly represent the interests of the partnership and its Limited partners in enforcing and prosecuting its rights.

70.   The Defendant EB-5 Fund, the defendant General Partner, the Defendant Project Company, MIMA and other Kor Parties are each named as a nominal defendant in this case in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

71.   Prosecution of this action, independent of the General Partner, is in the best interest of the EB-5 Fund.

72.   The wrongful acts complained of herein subject, and will continue to subject the EB-5 Fund, its limited partners including without being limited to the Plaintiffs to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

73.   The General Partner has not on behalf of the EB-5 Fund sued the Project Company or MIMA or the other Kor Parties for all of damages sustained by the EB-5 Fund.

74.   Upon information and belief, any demand by the Plaintiffs that the General Partner commence such lawsuits will be futile.

75.   Upon information and belief, MIMA and the General Partner in their capacities as the Managers of the Project Company, and/or others with whom or through whom it/they acted, breached their fiduciary duty, of loyalty, care and good faith, owing to the Project Company and its members, including the EB-5 Fund, in particular, in its apparent failure to ensure that the related-parties transactions with the Project Company on the one side, and MIMA and other Kor Parties on the other side, had been entirely fair to the Project Company.

76.   The conduct of the Co-Managers and its agents complained of herein involves a knowing and culpable violation of their obligations as managers of the Project Company, the absence of good faith on their part and a reckless disregard for their duties to the Project Company and its members that the Co-Managers and their agents were aware or should have been aware posed a risk of serious injury to the Project Company and its members.

77.   Plaintiffs will adequately and fairly represent the interests of the partnership and its limited partners in enforcing and prosecuting its rights, and by extension, the interests of the EB-5 Fund as a member in the Project Company, as well as the interests of the Project Company.

78.   The General Partner, the Defendant Project Company, MIMA and other Kor Parties are each named as a nominal defendant in this case in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

79.   Prosecution of this action, independent of the General Partner and the Co-Managers, is in the best interest of the EB-5 Fund and the Project Company.

80.   The wrongful acts complained of herein subject, and will continue to subject the EB-5 Fund and the Project Company, their applicable limited partners and members including without being limited to the Plaintiffs to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

81.   Neither Co-Managers have on behalf of the Project Company sued the other Kor Parties.

82.   Upon information and belief, any demand by the Plaintiffs that the General Partner and through the General Partner the Project Company commence such lawsuits will be futile.

83.   Consequently, this is also a derivative action brought by the Plaintiffs on behalf of the EB-5 Fund for the benefit of the nominal Defendant, the Project Company.

84.     Because of their abilities to control the business and general affairs of the Project Company, the Co-Managers owed the members of the Project Company, including without limitation, the EB-5 Fund a fiduciary obligation of good faith, loyalty and candor, and were and are required to use their utmost ability to control and manage the Project Company in a fair, just, honest and equitable manner.

85.     Each Co-Manager was and is required to act in furtherance of the best interests of the Project Company so as to benefit all members of the Project Company equally and not in furtherance of their personal interest or benefit or the interests of the Kor Parties.

86.     To discharge their duties, each Co-Manager was required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Project Company. By virtue of such duties, the Co-Managers and the officers and directors thereof were required to, among other things:

   a.  Exercise good faith to ensure that the affairs of the Project Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

   b.  Exercise good faith to ensure that the Project Company was operated in a diligent, honest and prudent manner and complied with all applicable

federal, state and foreign laws, rules, regulations and requirements, and all contractual obligations;

c.  Exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the partnership;

d.  Refrain from unduly benefiting themselves and their affiliates at the expense of the Project Company and its members; and

e.  When put on notice of problems with the Project Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE GENERAL PARTNER

### Breach of Contract

87.  Plaintiffs restate and reallege the allegations of ¶¶1-87 as if set forth fully herein.

88.  Under Delaware law, implicit in every contract is a covenant of good faith and fair dealing in the course of performance. This covenant incorporates into a contract any promises which a reasonable person in the position of the promise

would be justified in understanding were included, even if those promises are not explicit in the contract. Likewise, pursuant to this covenant, each party to a contract impliedly pledges not to do anything that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

89.    Here, Plaintiffs and other limited partners of the EB-5 Fund's reasonable and bargained-for expectation was that General Partner responsibly and diligently manage their investment into the EB-5 Fund and eventually they recover their investment.

90.    In view of the facts recited herein, General Partner has not acted with good faith in its dealing with the Plaintiffs and other limited partners of the EB-5 Fund.

91.    General Partner's conduct and failure to act is contrary to the implied covenant of good faith and fair dealing and has caused damages and will continue to cause damages to Plaintiffs and other limited partners of the EB-5 Fund in increasing the risk in obtaining the recovery of their EB-5 investment.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST GENERAL PARTNER

### Breach of Fiduciary Duty

92.    Plaintiffs restate and reallege the allegations of ¶¶ 1-87 as if set forth fully herein.

93.     Pursuant to the Limited Partnership Agreement, as well as under Delaware law, as a general partner of the EB-5 Fund, the General Partner has a fiduciary duty to the EB-5 Fund as well to the limited partners, including the individual Plaintiffs herein.

94.     In view of the facts recited herein, GP (and its agents) has breached their fiduciary duty.

95.     GP's and its agents' breach of their fiduciary duty has caused damages and will continue to cause damages to Plaintiffs and other limited partners of the EB-5 Fund in increasing the risk in obtaining the repayment of the EB-5 loan.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE GENERAL PARTNER, MIMA AND OTHER KOR PARTIES

### Breach of Contract

96.     Plaintiffs restate and reallege the allegations of ¶¶ 1-87 as if set forth fully herein.

97.     There is an agreement between MIMA and General Partner as the Managers of the Project Company.

98.     MIMA and the General Partner have breached the operating agreement by, among other things, being engaged in related party transactions which are not entirely fair to the Project Company.

99.     The breach by MIMA and the General Partner has caused damage to the Project Company, including the potential impending loss of the Hotel to foreclosure.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST MIMA AND THE GENERAL PARTNER, MIMA AND OTHER KOR PARTIES

### Breach of Fiduciary Duty

100.    Plaintiffs restate and reallege the allegations of ¶¶ 1-87 as if set forth fully herein.

101.    Pursuant to the operating agreement of the Project Company, as well as under the Delaware law, as the Co-Managers of the Project Company, each of MIMA and the General Partner has a fiduciary duty to the Project Company as well to the members of the Project Company, including the EB-5 Fund.

102.    In view of the facts recited herein, each of MIMA and the General Partner has breached their fiduciary duty.

103.    Such breach of their fiduciary duty has caused damages and will continue to cause damages to the Project Company, the EB-5 Fund and eventually to the Plaintiffs and other limited partners of the EB-5 Fund.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) Thereunder

104.   Plaintiffs restate and reallege the allegations of ¶¶ 1-87 as if set forth fully herein.

105.   By engaging in the conduct described above, all Defendants directly or indirectly, singly or in concert with each other, in connection with the purchase or sale of a security and by the use of means or instrumentalities of interstate commerce, or the mails, or of the facilities of a national securities exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b)  made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c)  engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of the limited partnership interests in the EB-5 Fund, and other persons.

106.   By engaging in the foregoing conduct, all Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## Prayer for Relief

WHEREFORE, it is respectfully requested that Judgment be entered in favor of the Plaintiffs and against the Defendants as follows:

A.   Declaring the causes of action in this complaint to be proper class action claims and certifying Plaintiffs as Class representatives;

B.   On the First and Second Causes of Action: (1) a judgment against the General Partner for all damages caused to the Plaintiffs and Class members by General Partner's breach of the partnership agreement and its fiduciary duty, to be determined by trial; (2) an order of the removal of the General Partner as the general partner of the EB-5 Fund;

C.   On the Third and Fourth Causes of Action: (1) a judgment against the General Partner and MIMA and other Kor Parties jointly and severally for all damages caused to the Project Company, the EB-Fund and the Plaintiffs and Class members by General Partner's and MIMA's breach of the operating agreement of the Project Company and their respective fiduciary duty as the Co-Managers thereof, to be determined by trial; (2) an order of the removal of the General Partner and MIMA as the Managers of the Project Company; and (3) an order of all defendants to disgorge all ill-gotten gains, including those form

improper related parties transactions;

D.    On the Fifth Cause of Action, (1) a judgment against all defendants finding them having committed the violations alleged in this Complaint; (2) an order permanently restraining and enjoining Defendants from violating, directly or indirectly, Sections 10(b) of the Exchange Act and any rules promulgated thereunder; and (3) a judgment ordering all defendants to disgorge all ill-gotten gains they received directly or indirectly as a result of the alleged violations, with pre-judgment interest thereon; and/or

E.    Interest, costs, fees, expenses and attorney fees as allowed by law, incurred by Plaintiff in bringing this action, along with such other and further relief as this Court deems just and proper.

Dated: May 8, 2024                              Respectfully submitted,

                                                STAMOULIS & WEINBLATT, LLC
                                                /s/ Stamatios Stamoulis
                                                Stamatios Stamoulis (#4606)
                                                Richard C. Weinblatt (#5080)
                                                800 N. West Street Third Floor
                                                Wilmington, Delaware 19801
                                                Telephone: (302) 999-1540
                                                Email: stamoulis@swdelaw.com
                                                Email: weinblatt@swdelaw.com

                                                Zhiping Liu
                                                Liu, Chen & Hoffman LLP
                                                14 Penn Plaza, Suite 2020

New York, New York 10122
Tel: 917-698-3258

*Counsel for Plaintiffs Nan Liu, Hao Liu, and Guangxiang XU Directly and derivatively on behalf of EB-5 SF Investment Limited Partnership directly and derivatively on behalf of SF Hotel Investors, LLC*